UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA JOHNSON (WADSWORTH),<br><br>Plaintiff,<br><br>v.<br><br>KEITH SLIPPER, et al.<br><br>Defendants. | No. 2:17-cv-02654-MCE-KJN<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Presently before the court are defendants' motions to dismiss and plaintiff's motion to reassign the case. (ECF Nos. 13, 17, 20, 22, 26, 34.) Plaintiff filed several objections and defendants filed a reply. (ECF Nos. 28-32.) The court took this matter under submission without oral argument, pursuant to Local Rule 230(g). (ECF No. 33.) Upon review of the documents in support and opposition, and the applicable law, the court finds as follows:

I. BACKGROUND

Plaintiff Rhonda Johnson (Wadsworth) ("plaintiff"), who proceeds pro se,[1] filed this action on December 20, 2017, which names defendants Keith Slipper ("Slipper"), Claire Eve Geber ("Geber"), Bret R. Rossi ("Rossi"), Benjamin R. Levinson ("Levinson"), Law Offices of Benjamin R. Levinson, APC ("Levinson APC"), PLM Lender Services, Inc. ("PLM"), Rhonda

---

[1] This action proceeds before the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

Houska Johnson ("Johnson"), and Susan K. Smith ("Smith"). (ECF No. 1.) Subsequently, the defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the alternative, defendants moved for a more definite statement pursuant to Rule 12(e). Additionally, they argued the complaint fails to meet the heightened pleading standard pursuant to Rule 9(b). (See ECF Nos. 13, 17, 20, 22, 26.) On August 15, 2018, plaintiff moved to reassign the case. (See ECF No. 34.)

      A.    <u>Complaint</u>

Plaintiff's complaint is vague, rambling, and largely incomprehensible. (See generally, ECF No. 1.) The complaint lists claims of "Racial Discrimination, Extortion, RICO, Judicial Racism, Attorney Misconduct, Tax Fraud, Bankruptcy Fraud, Attorneys [ ]filed documents known to be false in a U.S. Federal Court, All Attorneys withheld Self Enrichment, Extortion, Civil Rights Violations Rights to my own property, Due Process, Judicial Racism,[ ]RICO." (Id. at 1.)

Plaintiff's central allegations in the complaint appear to be that she is the victim of fraud and a conspiracy among certain defendants to take her property via a false mortgage in bankruptcy proceedings. (See, generally, ECF No. 1.)

Plaintiff alleges Levinson and Slipper "falsified signatures on a deed previously submitted in Adversary Court by whiting out, recopying various account numbers to appear Keith Slipper sold his 'deed' back to the original deed holder." (ECF No. 1 at 8.) Specifically, plaintiff asserts that

> Keith Slipper took his name off my title and allegedly sold it to an unknown party. The criminal issues he never had a valid deed allegedly transferred to him from Conseco Financial Servicing Inc., never had my deed and they didn't attempt to collect or default they never filed a deed or interest on my property.

(Id.) Plaintiff additionally claims that defendants Levinson APC and PLM are involved in the fraud because "Keith Slipper aided by Benjamin R Levinson altered my title. All of Keith Slipper documents go through the Law Offices of Benjamin R Levinson and PLM Lender Services Inc." (Id.)

1 | Plaintiff's alleges that defendant "Geber, Keith Slipper's wife and silent partner in his crimes . . . aided him in transferring property to . . . Geber to protect Keith Slipper's and their properties from a lawsuit." (Id. at 10, 13.)

As to defendant Rossi, plaintiff largely provides legal conclusions with sparse factual claims. (ECF No. 1 at 10.) Specifically, plaintiff alleges, "Rossi [and] Levinson [e]ngaged in conduct involving dishonesty, [f]raud, deceit, coercion, misrepresentation, harassment and knowingly making statements before a Federal Judge in Bankruptcy Court, known to be fraudulent, and proven in writing through title report and IRS documentation." (ECF No. 1 at 10.)

In her allegations against defendant Smith, a U.S. Bankruptcy Court trustee, plaintiff asserts Smith "failed to protect my rights" after a Chapter 7 bankruptcy hearing, where Smith found no asset, leaving plaintiff with "clouded title." (ECF No. 1 at 11.) According to plaintiff, Smith's ruling is documented proof of racism because "[Levinson and Rossi] are white and I am African American so racially I was profiled" and "every member I encountered in U.S. Federal Bankruptcy Court was white." (Id.) She alleges this is an "entire act of racism, cruelty and violation of my Civil Rights for full investigation and altering my title and placing a fictitious 2nd mortgage with no name." (Id.)

Lastly, plaintiff brings a claim of identity theft against defendant Houska. (ECF No. 1 at 15.) Plaintiff asserts Houska "impersonated Plaintiff and ran up a bill on Bank of A credit card for $9,000" and that she suffered for 10 years "from this imposter." (Id.)

In her prayer for relief, plaintiff seeks monetary damages from defendants and requests that the court "clear her title . . . of Keith Slipper and his fraudulent documents . . . [clear her] credit of Chapter 13 and Chapter 7 [bankruptcy rulings] . . ." restore her title, and provide her a "permanent lifetime restraining order against all defendants." (Id. ECF No. 14 at 14-15.)

////
////
////
////

B. Relevant Factual Background

Defendants' requests for judicial notice provide more clarity on the issues before the court.[2] From 2002 until 2007, plaintiff was involved in multiple bankruptcy proceedings as a debtor in U.S. Bankruptcy Court in the Eastern District of California. The creditor was Slipper, who was represented by Levinson, and the Chapter 7 hearing officer was Smith, each of whom are defendants in this matter. (See ECF No. 18, Ex. A-B; ECF No. 22-3, Ex. A; ECF No. 26-2.)

On December 10, 2002, plaintiff filed for Chapter 13 bankruptcy in case no. 02-33576, which was dismissed by civil minute order on June 14, 2005. (ECF No. 18, Ex. A.) The day before, on June 13, 2005, plaintiff filed for Chapter 7 bankruptcy in case no. 05-27212. (ECF No. 18, Ex. B.) On September 1, 2005, after trustee Smith conducted a 341 Meeting of Creditors, Smith reported that there were no assets that were not exempted or fully encumbered, available for liquidation and distribution to the creditors. (ECF No. 26-2, Ex. A.) The same day, Smith filed a report concluding that there was no property available for distribution. (Id., Ex. B.)

The docket reflects that on December 14, 2005, Slipper moved for an order terminating the automatic bankruptcy stay so that he could start a non-judicial foreclosure on plaintiff's property. (ECF No. 18, Ex. B; ECF No. 26-2, Ex. E.) In an attempt to stop the foreclosure, plaintiff filed an adversary proceeding in case no. 05-02445 against Slipper by challenging the enforceability of an alleged lien. (ECF No. 26-2, Ex. G.) On January 9, 2007, the U.S. Bankruptcy Court dismissed the adversary proceeding because the sole issue of whether there is an enforceable lien on her real property is a state law matter. (Id.) Two weeks later, on January 23, 2007, plaintiff received a Chapter 7 discharge in case no. 05-27212. (ECF No. 18, Ex. B.)

Plaintiff then filed claims against Slipper, Levinson, Rossi, and several others in Sacramento County Superior Court in 2008. (See ECF No. 18, Ex. C; ECF No. 22-3, Ex. C.) The first cause of action brought by plaintiff was a "Fraudulent deed in attempt to steal . . .

---

[2] The court grants defendants' requests for judicial notice (ECF Nos. 18, 22-3, 26-2), which request the court to take judicial notice of public records recorded with the U.S. Bankruptcy Court in the Eastern District of California and the Sacramento County Superior Court of California. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of matters of public record).

1  Plaintiff's home" alleged against Slipper and Levinson.  (Id.)  The second claim was brought

2  against Slipper and Levinson for "fraudulent statements and documents submitted in U.S.

3  Bankruptcy Court."  (Id.)  The fifth claim was against Rossi, alleging many of the same claims as

4  the present complaint in this court.  (Id.)  On November 6, 2008, Sacramento Superior Court

5  dismissed the entire action against Rossi without leave to amend.  (ECF No. 22-3, Ex. C.)  On

6  November 17, 2008, the court dismissed the claims against defendant Levinson with prejudice for

7  failure to state a cause of action.  (ECF No. 18, Ex. C.)

8  II.    LEGAL STANDARDS

9       Federal courts are courts of limited jurisdiction.  A motion to dismiss brought pursuant to

10 Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction to hear

11 the complaint.  A federal court has an independent duty to assess whether federal subject matter

12 jurisdiction exists, whether or not the parties raise the issue.  See United Investors Life Ins. Co. v.

13 Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004) (stating that "the district court had a duty

14 to establish subject matter jurisdiction over the removed action *sua sponte*, whether the parties

15 raised the issue or not"); accord Rains v. Criterion Sys., Inc., 80 F.3d 339, 342 (9th Cir. 1996).

16 The court must *sua sponte* dismiss the case if, at any time, it determines that it lacks subject

17 matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  A federal district court generally has original

18 jurisdiction over a civil action when: (1) a federal question is presented in an action "arising

19 under the Constitution, laws, or treaties of the United States" or (2) there is complete diversity of

20 citizenship and the amount in controversy exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332(a).

21 District courts have supplemental jurisdiction over state law claims when they are so related and

22 form part of the same case or controversy as the claims within original jurisdiction.  See 28

23 U.S.C. § 1367(a).  When a federal district court dismisses all claims over which it has original

24 jurisdiction, they may decline to exercise supplemental jurisdiction over any state law claims.

25 See 28 U.S.C. § 1367(c)(3).

26     A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

27 challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

28 Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071.

The court must construe a *pro se* pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe *pro se* filings liberally even when evaluating them under the standard announced in Iqbal).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the

propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

III. DISCUSSION

Defendant Smith seeks to dismiss plaintiff's complaint because plaintiff failed to comply with the Barton doctrine, and that she is also entitled to quasi-judicial immunity and qualified immunity. (See ECF No. 26.) All defendants seek to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim. (See ECF Nos. 13, 17, 20, 22, 26.) In the alternative, defendants move for a more definite statement. (See ECF Nos. 17, 20, 22.) For the reasons below, the undersigned recommends that defendants' motions to dismiss be GRANTED as to all defendants without leave to amend.

A. Claims against Defendant Smith

As explained, defendant Smith was the trustee in one of plaintiff's underlying bankruptcy proceedings. Smith argues that the Barton doctrine prevents the court from exercising subject matter jurisdiction because plaintiff failed to obtain leave from bankruptcy court to file this action. (ECF No. 26, at 3-4.) Even if the plaintiff obtained leave from the bankruptcy court, defendant Smith asserts that she is entitled to quasi-judicial immunity from plaintiff's § 1983 claims because defendant's actions during the bankruptcy proceeding were within the scope of her authority as a bankruptcy trustee. (ECF No. 26 at 5-6.) In the alternative, Smith argues that she is entitled to qualified immunity because her conduct did not violate clearly established law. (Id. at 6-7.)

1. *Barton Doctrine*

Under the Barton doctrine, "a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." In re Crown Vantage, Inc., 421 F.3d 963, 970 (9th Cir. 2005). "The touchstone of the Barton inquiry is whether a suit challenges 'acts done in [a trustee's] official capacity and within his authority as an officer of the

7

Court.'" In re Yellowstone Mountain Club, LLC, 841 F.3d 1090, 1094 (9th Cir. 2016). If a party fails to obtain leave of the bankruptcy court before initiating an action in another forum, then the other forum lacks subject matter jurisdiction. In re Crown Vantage, Inc., 421 F.3d at 971.

Here, plaintiff does not allege that she obtained leave from the bankruptcy court before filing this action against Smith. Nor has plaintiff cogently disputed that the Barton doctrine bars her suit. (See ECF No. 29.) It is apparent that Smith was acting as a duly appointed bankruptcy trustee in relation to the allegations against her in this matter. (See ECF No. 26-2, Ex. A-H.) Thus, even assuming that all the allegations in plaintiff's complaint are true, all of Smith's actions were taken "in [a trustee's] official capacity and within [the trustee's] authority as an officer of the Court." In re Yellowstone Mountain Club, LLC, 841 F.3d at 1094. Accordingly, the Barton doctrine applies and this court lacks subject matter jurisdiction over plaintiff's claims against defendant Smith.

### 2. *Quasi-Judicial Immunity*

Even if the Barton doctrine did not apply, plaintiff's claims against Smith are otherwise barred. "Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order." Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989); See United States v. Hemmen, 51 F.3d 883, 891 (9th Cir. 1995). This immunity, known as quasi-judicial immunity applies if the trustee satisfies four elements: "(1) [her] acts were within the scope of [her] authority; (2) the debtor had notice of [her] proposed acts; (3) [she] candidly disclosed [her] proposed acts to the bankruptcy court; and (4) the bankruptcy court approved [her] acts." In re Harris, 590 F.3d 730, 742 (9th Cir. 2009).

Here, defendant Smith satisfies all four elements. First, Smith's actions were within the scope of her authority and duties. Smith conducted a 341 Meetings of Creditors, made a diligent inquiry into plaintiff's financial affairs, and determined that there was no property available for distribution (ECF No. 26-2, Ex. A-B), which is all within the scope of her statutorily conferred authority as a trustee. See 11 U.S.C. § 704(a)(1). Second, Smith filed a Notice of Filing Report of No Distribution on September 2, 2005, and plaintiff was served with the notice on September 4, 2005. (ECF No. 26-2, Ex. C.) The third and fourth elements are also met because the notice

8

was fully disclosed to and approved by the Bankruptcy Court. (See Id.) The discharge of the debtor was entered on October 11, 2005, and a final decree closed the debtor's bankruptcy case on January 23, 2007. (ECF No. 26-2, Ex. D-H.) Therefore, defendant Smith is entitled to quasi-judicial immunity because she was acting "within the scope of [her] authority and pursuant to court order." Bennett, 892 F.2d at 823.

### 3. *Qualified Immunity*

Even if quasi-judicial immunity did not apply, Smith would receive qualified immunity. In the context of § 1983 actions, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal citations omitted). Generally, the federal law must be clearly established in a fairly

> Particularized . . . sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (internal citations omitted). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (internal citations omitted).

Defendant Smith persuasively argues that she is entitled to qualified immunity here because her actions were objectively reasonable. No reasonable trustee, who—in the scope of her employment—conducted a 341 Meetings of Creditors, made a diligent inquiry into the debtor's financial affairs, and decided a no-asset determination, would have reason to believe that her actions violated any clearly established constitutional right or federal law. In the complaint, plaintiff asserts that defendant Smith's actions "failed to protect [her] rights under the law and US Constitution which is documented proof of racism." (ECF No 1. at 11.) This is an unsupported legal conclusion that the court need not accept as true. See Paulsen, 559 F.3d at 1071. Accordingly, defendant Smith is entitled to qualified immunity.

9

B. Federal Claims

Liberally construed, the complaint attempts to bring several federal claims for alleged violations of federal criminal statutes, for alleged violations of plaintiff's Fifth and Fourteenth Amendment rights, and for alleged RICO violations. (See ECF No. 1 at 4, 8-16.)

1. *Federal Criminal Laws*

As an initial matter, the complaint alleges a plethora of federal criminal laws were committed by defendants including fraud, wire fraud, racketeering, and bribery.[3] (ECF No 1. at 4.) Plaintiff asserts several times in the complaint that the defendants were "criminals" who committed "criminal" and "illegal" acts. (Id. at 9, 12-14.) Additionally, plaintiff indicates that she will seek out criminal charges against defendant Houska and prove she is guilty of identity theft. (Id. at 15.)

It is well established that a plaintiff cannot recover a civil judgement under criminal laws, nor can a private citizen commence a criminal prosecution. See Maine v. Taylor, 477 U.S. 131, 137 (1986) ("private parties … have no legally cognizable interest in the prosecutorial decisions of the Federal Government"). The United States Attorneys generally have the responsibility to prosecute offenses against the United States in their districts. See 28 U.S.C. § 547. Plaintiff is neither acting on behalf of or as a United States Attorney. Accordingly, plaintiff's claims that seek to enforce federal criminal statutes, and recover civil damages as a result, are subject to dismissal.

2. *Civil Rights Claims under 42 U.S.C. § 1983*

Plaintiff alleges that the proceeding in U.S. Federal Bankruptcy Court was an "entire act of racism, cruelty and violation of [her] Civil Rights." (ECF No. 1 at 11.) The decision made in bankruptcy court was "documented proof of racism" because Slipper and Levinson are white and plaintiff is an African-American female. (ECF No. 1 at 11.) Plaintiff also made other imprecise and conclusory allegations against other defendants, including one against Levinson for "disrespect for the plaintiff's civil rights and breach of oath as an attorney and officer of the court

---

[3] Plaintiff invokes the following sections of Title 18 of the United States Code: 1001, 1961, 1341, 1343, 134, 1957, 152, 157, 922, and 482.

10

and tax fraud." (ECF No. 1, at 14.) To the extent that plaintiff alleges that her civil rights were violated, she appears to bring claims under 42 U.S.C § 1983 based upon alleged racial discrimination in violation of either the Fifth or Fourteenth Amendment. (ECF No. 1 at 4.)

"To state a claim for relief under section 1983, the Plaintiffs must plead two essential elements: 1) that the Defendants acted under color of state law; and 2) that the Defendants caused them to be deprived of a right secured by the Constitution and laws of the United States." Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997). The first element requires that defendants have "exercised power 'possessed by virtue of state law and made possible only because [they are] clothed with the authority of state law' . . . [or that defendants'] conduct satisfies the state-action requirement of the Fourteenth Amendment." West v. Atkins, 487 U.S. 42, 49 (1988) (citations omitted).

"While generally not applicable to private parties, a § 1983 action can lie against a private party when 'he is a willful participant in joint action with the State or its agents.'" Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003). Courts "recognize at least four different criteria, or tests, used to identify state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" Id.

All defendants—aside from Smith, who is otherwise immune—are private parties. While any deeds or mortgages on plaintiff's property are regulated by state and federal law, there is nothing to suggest that private individuals in real estate transactions are willful participants in joint action with the state in any manner whatsoever. See Charmicor v. Deaner, 572 F.2d 694, 695-96 (9th Cir. 1978). Even assuming that defendants had fraudulently obtained a deed to plaintiff's property, or otherwise attempted to defraud the Bankruptcy Court, such activity does not constitute state action.

More fundamentally, plaintiff has failed to allege any facts to suggest that her civil rights have been violated. Plaintiff asserts that "racially I was profiled as not paying my bills and deception and statements unreliable because I am a African American female and every member I encountered in U.S. Federal Bankruptcy Court was White." (Id.) Plaintiff's statements are conclusory and unsupported by any factual allegations that demonstrate any of her civil rights

have been violated.  The court need not accept such bald assertions as true.  See Paulsen, 559 F.3d at 1071.

Accordingly, plaintiff has failed to state a claim under 42 U.S.C. § 1983 because she has failed to allege any facts that demonstrate that defendants violated any of her constitutional rights or that defendants—other than Smith—acted under color of state law.

### 3. *RICO Claims*

Plaintiff also appears to raise RICO claims against defendants.  (ECF No 1. at 13-15.)  "To prevail under RICO, a plaintiff must establish a 'pattern of criminal activity.' . . . At a minimum, a 'pattern' requires that the predicate criminal acts be 'related' and 'continuous.'"  Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1527 (9th Cir. 1995) (citing H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989)).  RICO violations are either a pattern of racketeering activity or the collection of an unlawful debt, or a conspiracy to commit either.  See 18 U.S.C. §1962; H.J. Inc, 492 U.S. at 232.  A pattern of racketeering activity requires at least two acts committed within 10 years of each other that are related, along with a threat of continuing activity. See 18 U.S.C § 1961(5); H.J. Inc, 492 U.S. at 239.

Here, plaintiff merely uses the word "RICO" six times throughout the complaint without providing any factual statements of any conduct that would constitute a RICO violation.  (ECF No. 1 at 1, 4, 13-15.)  Plaintiff also asserts that the latest fraud against her is that she could not locate who is holding a second mortgage on her property, which meant there was no clear title.  (Id. at 14.)  These conclusory assertions are not supported by factual allegations that demonstrate that defendants were engaged in a pattern of racketeering activity or that the second mortgage loan was illegal.  The court need not accept such bald assertions as true.  See Paulsen, 559 F.3d at 1071.

Therefore, plaintiff has failed to state a claim under RICO because she has failed to sufficiently allege that defendants were engaged in conduct that violates RICO.  See 18 U.S.C. § 1962.  Nor could plaintiff state a claim under RICO, if granted leave to amend, because the occurrence of a single unspecified mortgage loan does not constitute a pattern of racketeering activity.

C. State Law Claims

As noted above, plaintiff's complaint appears to assert the state law claims of fraud against all defendants, and identity theft against only defendant Houska. The court expresses no opinion regarding the merits of plaintiff's state law claims. Instead, the undersigned recommends that the court decline to exercise supplemental jurisdiction over the state law claims since plaintiff has failed to establish any federal claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction"); see also Acri v. Varian Associates, Inc., 114 F.3d 999, 1000-01 (9th Cir. 1997) (" 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims' "), quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988). Here, given that the federal claims are subject to dismissal for lack of subject matter jurisdiction and for failure to state a claim, dismissal of the state law claims without prejudice is appropriate.[4]

D. Leave to Amend

"[I]f a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied . . . if amendment of the complaint would be futile . . . [or if] the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir.), amended, 856 F.2d 111 (9th Cir. 1988) (internal citations omitted).

Here, as explained, the court lacks subject matter jurisdiction over defendant Smith because of the application of the Barton doctrine. And, even if plaintiff were to satisfy the Barton

---

[4] Because the dismissal of the state law claims is without prejudice, plaintiff may be able to pursue such claims in state court. Nevertheless, and although the court does not adjudicate the merits of those claims, some of those claims appear to be barred by the statute of limitations and res judicata; especially considering that plaintiff's 2008 complaint in Sacramento County Superior Court raised many of the same claims against some of the same defendants as here, and was dismissed without leave to amend against defendant Rossi. (ECF No. 22-3, Exs. B-C.) Therefore, to avoid the potential imposition of sanctions in the state court forum, plaintiff should carefully consider whether refiling the action in state court is appropriate.

13

doctrine, Smith is protected by quasi-judicial immunity, or in the alternative, qualified immunity. Thus, Smith is immune from suit by plaintiff in the context of this action, and any leave to amend the claims against Smith would be futile. See Bennett, 892 F.2d at 823.

Furthermore, plaintiff has failed to state any federal claims as to all defendants. Plaintiff cannot cure the deficiencies in her federal claims by pleading additional consistent facts because any additional facts would not cure the issue that none of the defendants were state actors, were acting under the color of state law, or were "willful participant[s] in joint action with the State or its agents." Kirtley, 326 F.3d at 1092. According to plaintiff, the defendants are private parties who lied to and committed fraud against the U.S. Bankruptcy Court.

Moreover, plaintiff's admissions and her inability to state a federal claim demonstrate that the gravamen of plaintiff's complaint is actually a non-diverse state law claim—namely, that these private individuals allegedly committed fraud against plaintiff. Original jurisdiction is not met in federal court by simply invoking the words civil rights, RICO, and U.S. Constitution. Plaintiff may not bring state law claims in federal court simply because she would prefer the federal forum to the state one, without some independent jurisdictional basis for bringing the issues in federal court, which plaintiff cannot assert here.

Therefore, leave to amend would be futile.

E. Plaintiff's Motion to Reassign Case

As to plaintiff's motion to reassign the case, there is no evidence to support plaintiff's conclusory assertion that the undersigned has a "history of racial and judicial bias" and is "totally [p]rejudiced [a]gainst the Plaintiff." (ECF No. 34 at 1, 3.) Plaintiff has failed to demonstrate how the undersigned has shown prejudice against her. Indeed, prior to issuing the instant findings and recommendations, the undersigned has not issued any significant order or findings in this matter. The undersigned rescheduled, and then vacated the hearing on the pending motions to dismiss. (See ECF Nos. 27, 33.) While plaintiff is not pleased with the court's decision to vacate the hearing, the decision was made pursuant to the local rules of this court. See E.D. Cal. L.R. 230(g) (a "motion may be submitted upon the record and briefs on file. . . if the Court so orders, subject to the power of the Court to reopen the matter for further briefs or oral arguments or both").

Additionally, this case proceeds before the undersigned pursuant to federal statute and the local rules of the Eastern District of California. 28 U.S.C. § 636(b)(1) grants district judges the authority to designate magistrate judges to hear a wide variety of matters. The local rules of this court provide that "[i]n Sacramento, all [civil] actions in which all the plaintiffs or defendants are proceeding *in propria persona*, including dispositive and non-dispositive motions and matters" shall be assigned to a magistrate judge. E.D. Cal. L.R. 302(c)(21).

Here, plaintiff proceeds without an attorney, *in propria persona*. Thus, the rules of this court determine that all motions in this matter will be considered initially by a magistrate judge. See E.D. Cal. L.R. 302(c)(21). At the same time, since plaintiff has not consented to proceed before the undersigned, United States District Judge Morrison C. England retains jurisdiction over this case. As a result, Judge England will decide any dispositive motion—including those currently pending before the court—after the undersigned magistrate judge makes non-binding findings and recommendations. See 28 U.S.C. § 636(b)(1)(B).

Therefore, there is no legal basis for plaintiff's motion to reassign this case. Additionally, since plaintiff's motion to reassign the case is not dispositive, the undersigned may decide this issue by order.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motions to dismiss (ECF Nos. 13, 17, 20, 22, 26) be GRANTED as to all defendants without leave to amend.
2. All claims against defendant Susan Smith be DISMISSED WITH PREJUDICE.
3. Plaintiff's federal claims against all remaining defendants be DISMISSED WITH PREJUDICE.
4. Plaintiff's state law claims against all remaining defendants be DISMISSED WITHOUT PREJUDICE.
5. The Clerk of Court be ordered to close the case.

IT IS ALSO HEREBY ORDERED that:

1. Plaintiff's motion to reassign the case (ECF No. 34) is DENIED.

    2. In light of these recommendations, all pleading, discovery, and motion practice in this action are STAYED pending resolution of the findings and recommendations. With the exception of objections to the findings and recommendations and any non-frivolous motions for emergency relief, the court will not entertain or respond to any motions and other filings until the findings and recommendations are resolved.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated: October 11, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE